IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGIOS A., | ) |
|     Plaintiff, | ) No. 20-cv-02729 |
| v. | ) Magistrate Judge M. David Weisman |
| ANDREW SAUL, Commissioner of Social Security, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Georgios A. appeals the Social Security Administration Commissioner's decision denying his application for benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**Background**

On March 27, 2017, plaintiff applied for benefits, alleging a disability onset date of April 1, 2013. (R. 13.) Her application was denied initially on August 4, 2017, and upon reconsideration on October 3, 2017. (*Id.*) Plaintiff requested a hearing, which was held by an Administrative Law Judge ("ALJ") on February 19, 2019. (*Id.*) On March 28, 2019, the ALJ issued an unfavorable decision finding plaintiff not disabled. (R. 13-26.) The Appeals Council declined to review the decision (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record." "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Whatever the meaning of

1

substantial in other contexts, the threshold for such evidentiary sufficiency is not high." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations omitted and cleaned up).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether he is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the Commissioner to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since April 1, 2013, the alleged onset date. (R. 15.) At step two, the ALJ found that plaintiff has the following severe impairments: "traumatic brain injury, cervical and lumbar degenerative disc disease, neurocognitive disorder and bipolar disorder." (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments set forth in the listing of impairments promulgated by the Commissioner. (R. 15-16.) This finding led the ALJ to conclude

at step four that plaintiff has the residual functional capacity to engage in "light work" with certain exceptions. (R. 17-24.) At step five, the ALJ determined that plaintiff could not perform his past relevant work but that he could perform other work that existed in significant numbers in the national economy. (R. 24-25.) Accordingly, the ALJ concluded that plaintiff was not disabled under the Social Security Act. (R. 26.)

An ALJ's RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419 (7th Cir. 2010); *see also Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (ALJ impermissibly cherry-picked evaluation based on highest functioning score when claimant had lower score two weeks later). In assessing subjective symptoms, an ALJ must consider a variety of factors, including objective medial evidence; daily activities; "the location, duration, frequency, and intensity of pain or other symptoms"; and use of medication. SSR 16-3p[1], 2016 WL 1119029, at *7. The ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003).

Here, the ALJ determined that plaintiff had the following RFC:

---

[1] The Court notes that Defendant revised its guide for evaluating symptoms in disability claims, which "eliminat[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).

> [T]o perform light work . . . except he is able to frequently push and pull with the dominant right upper extremity but only occasionally reach overhead and handle with the right upper extremity; he is not able to climb ladders, ropes or scaffolds and he must avoid concentrated exposure to hazards such as unprotected heights or machinery with unguarded moving mechanical parts; he is able to perform simple, routine, repetitive tasks with only occasional interaction with supervisors and co-workers and no interaction with the general public.

(R. 17-18.)

### A. Substantial Evidence

Plaintiff contends that the ALJ created an RFC assessment that was based mostly on his own opinion and not supported by substantial evidence. (ECF 15 at 5.) That is, the ALJ cherry-picked the evidence, improperly discredited plaintiff's statements, failed to accommodate all limitations arising out of plaintiff's combined severe impairments, and improperly rejected the opinion of a long-term treating psychologist. The Court disagrees. The ALJ thoroughly summarized the medical evidence, noting that plaintiff has a history of traumatic brain injury as well as cervical and lumbar degenerative disc disease with treatment dating back to spring 2016. (R. 18-19.) The ALJ made note of plaintiff's complaints of nerve damage, gait problems, the need to use a cane when the weather is cold, full body arthritis, chronic pain in his low back and legs, weakness in his right arm, and the need for help with personal care and laundry. (R. 18-23). After considering the evidence, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause plaintiff's alleged symptoms but that plaintiff's statements concerning the intensity, persistence, and limiting effects were not entirely consistent with the evidence. (R. 19.) In support, the ALJ noted that plaintiff's routine examinations showed no evidence of gait impairment requiring a prescription for a cane. (R. 22-23.) Instead, the medical records, taken together, showed only a very intermittent need for a cane (*Id.*) The ALJ further noted that plaintiff has good strength, with mildly diminished strength in his left leg, and good grip

4

strength in his right hand and motor strength in his right arm. (*Id*.) Additionally, the ALJ noted that plaintiff could perform chores around the house, exercises, has a good range of motion in all of his joints, and that Lyrica improved his ability to function. (R. 19-23.)

Plaintiff's contention that the ALJ overlooked evidence about plaintiff's need for a cane is also unpersuasive. Only one psychotherapy note shows plaintiff using a cane. (R. 3666.) And the record is devoid of plaintiff needing or having a prescription for a cane.[2] *See* SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time periodically, or only in certain situations; distance and terrain; and any other relevant information."). Moreover, the Court notes that the ALJ addressed plaintiff's cane use in detail, discussing treatment notes from 2009 through 2019. (R. 23.) *See Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (the omitted evidence did not reveal any substantially different information and, therefore, the ALJ's omission was not improper).

Regarding daily activities, plaintiff testified that he struggled with laundry and personal care because he is not able to lift his right arm over his head. (R. 17.) While an ALJ may consider daily activities when assessing a claimant's credibility, *Jelenik v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011), the ALJ must also explain how the claimant's activities are inconsistent with medical evidence. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Here, the ALJ adequately explained why plaintiff's daily activities are not entirely consistent with the medical evidence and

---

[2] Plaintiff argues that the ALJ ignored evidence in reaching these conclusions, and argues "[p]laintiff has consistently presented with a gait impairment, and though his symptoms are somewhat weather dependent, he has used a cane throughout the relevant period," citing to *inter alia* R. 3525-26 and R. 3535-3536. (ECF 14 at 8.) However, plaintiff's record citations do not support this position. R. 3525-26 has no mention of cane usage but rather notes "no joint/muscle pain." R. 3536 notes "no gait problems."

other evidence in the record. (R. 17-24.). The ALJ noted that plaintiff had reported that he could straighten up around the house, swim, tend to his personal care, cook, clean, wash laundry, and drive. (R. 22.) Additionally, a consultative exam showed that plaintiff could walk more than 50 feet without assistance and that he had a good range of motion in his joints. (*Id*.) Based on plaintiff's self-reported level of activities, along with other mild objective findings, the ALJ properly determined that plaintiff could perform a reduced range of light work that would account for his mildly diminished strength. (*Id*.)

As to plaintiff's mental impairments, plaintiff contends that the ALJ undermined and/or ignored evidence about his anxiety, depression, and stress. (ECF 14 at 10-11.) This argument is unpersuasive. A review of the record shows that the ALJ considered plaintiff's feelings of irritability, social anxiety, and depression. (R. 19, 23.) The ALJ also considered plaintiff's psychotherapy notes and therapy reports, including a June 2013 report where plaintiff had discussed, among other things, his feelings about being terminated from his job and his stressful relationship with his fiancé. (R. 19-20.) Additionally, the ALJ noted that plaintiff had joined a fitness program, declined psychotropic medication, attended his son's kindergarten graduation, and was making efforts to go out with friends. (R. 20, 24.) Ultimately, the ALJ found that, despite plaintiff's mental impairments, there was no evidence showing any ongoing mental health treatment. (R. 23.) Based on the medical evidence, the ALJ determined that plaintiff had relatively mild symptoms and that he could perform simple, routine, and repetitive tasks, and that he could perform work with only occasional interaction with supervisors/co-workers. (R. 23-24.)

Overall, this Court finds that the ALJ did not cherry pick the evidence. Instead, the ALJ's analysis was fulsome and is supported by substantial evidence. *See Denton*, 596 F.3d at 425 (An ALJ cannot cherry-pick fact, "[b]ut an ALJ need not mention every piece of evidence, so long as

he builds a logical bridge from the evidence to his conclusion."). Moreover, the Court finds that the ALJ built a "logical bridge" between the evidence and his determination that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 19.) *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("The ALJ is not required to discuss every piece of evidence, but must build a logical bridge from evidence to conclusion."). The ALJ reviewed the objective evidence in the record, considered plaintiff's testimony, and compared the evidence with plaintiff's statements. (R. 18-24.) *See Back v. Barnhart*, 63 Fed. App'x 254, 259 (7th Cir. 2003) (noting that "the regulations direct the ALJ to evaluate medical evidence and to look for objective medical evidence that corroborates a claimant's subjective statements of pain"); *Lopez v. Astrue*, 807 F. Supp. 2d 750, 761 (N.D. Ill. 2011) ("Although an ALJ cannot ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration."). This Court finds the ALJ fully and adequately evaluated plaintiff's impairments.

### B. "Paragraph B" Criteria

Plaintiff next challenges the ALJ's assessment of the so-called "paragraph B" criteria at Step 3—that plaintiff is not limited in his ability to understand, remember, and apply information, is moderately limited in interacting with other, is moderately limited in his ability to concentrate, persist or maintain pace and interact with others, and mildly limited in his ability to adapt or manage himself—by arguing that the ALJ undermined plaintiff's subjective symptoms. (R. 16-17.)

7

Here, the ALJ determined that plaintiff has no limitation in his ability to understand, remember, or apply information. (R. 16.) In making this finding, the ALJ considered negative considerations (plaintiff testified that he cannot prepare meals because he is forgetful) along with positive considerations (plaintiff reported during two consultative exams that he could cook for himself; plaintiff's treatment notes show no memory deficits; plaintiff could recall background information; and, two consultative examiners noted that plaintiff's recent and remote memory was intact and that plaintiff could relate information in a logical and coherent manner). (*Id*.)

When determining that plaintiff is moderately limited in his ability to interact with others, the ALJ acknowledged that plaintiff testified that he does not like to leave home and that he was withdrawing socially because he does not like to be around crowds. (R. 17.) However, the ALJ also noted that plaintiff was living with a friend, went out occasionally with his girlfriend, shopped at Costco once a month, attended his son's kindergarten graduation, reported making an effort to go out with friends, and appeared to interact well with his providers. (*Id*.)

As for the plaintiff's ability to concentrate, persist, or maintain pace, the ALJ again compared negative considerations (plaintiff would be expected to encounter some difficulty due to pain) with positive considerations (plaintiff could perform simple math problems; he watched television; he could spell the word "world" forward and backward; he was able to maintain a conversational exchange during a consultative examination; and, there was no evidence showing that plaintiff could not complete tasks in a timely manner or work at an appropriate/consistent pace. (*Id*.)

Finally, the ALJ determined that plaintiff has a mild limitation in his ability to manage himself, again comparing negative considerations (plaintiff does not wash laundry or prepare meals) with positive considerations (plaintiff testified that he can tend to his personal care; he

8

shops monthly at Costco; he stated during a consultative exam that he could cook, clean, wash laundry, and drive; he lived alone at times; and, there was no evidence to show that plaintiff could not respond to demands or adapt to change). (*Id.*)

A review of the record shows that the ALJ thoroughly and properly considered this evidence and did not undermine plaintiff's subjective symptoms. That is, substantial evidence supports the ALJ's findings related to "paragraph B" criteria.

### C. Vocational Expert Hypothetical Related to Concentration, Persistence, and Pace

Plaintiff next argues that the RFC and Vocational Expert ("VE") opinion limiting him to simple, repetitive work does not adequately address his moderate deficiencies in concentration, persistence, and pace. A hypothetical that is limited to simple, repetitive work generally does not address deficiencies in concentration, persistence, and pace. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) (An ALJ should "refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do."). However, the Seventh Circuit has also held that an RFC and VE opinion may be upheld when the ALJ explains how the RFC adequately addresses a claimant's specific limitation. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (RFC determination upheld when medical evidence showed that plaintiff's mental impairments only arose in social settings and plaintiff presented no evidence showing that these impairments prevented him from performing simple, routine, and repetitive tasks).

Here, the ALJ examined plaintiff's testimony, therapy notes, and consultative exams. Plaintiff generally testified that he is cranky and minimally interacts with the public. (R. 23.) During therapy sessions, plaintiff reported feeling anxious and overwhelmed. (*Id.*) Despite this,

the ALJ found no evidence of any ongoing mental health treatment and noted that plaintiff declined taking any psychotropic medication. (*Id*.) The ALJ also noted that plaintiff made efforts to go out with friends, attended his son's kindergarten graduation, was friendly and engaging during a consultative exam, and his memory, concentration, and attention span were intact. (*Id*.) Ultimately, the ALJ determined that plaintiff could perform simple, routine, and repetitive tasks with only occasional interaction with supervisors/co-workers and no interaction with the public based on plaintiff's reported level of social activity as well as his apparent ability to interact well with his providers. Plaintiff has presented no opinion evidence stating otherwise. In light of these factors and findings, the Court finds that the ALJ created an RFC that properly accounts for plaintiff's moderate limitations. *See Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) (finding substantial evidence supported the ALJ's finding that restrictions in the hypothetical adequately address the plaintiff's "moderate" limitations in concentration, persistence, and pace).

### D. Opinion Evidence

Plaintiff filed his application for benefits on March 27, 2017. (R. 13.) For claims filed on or after March 27, 2017, such as plaintiff's claim, ALJs are not required to defer to or give specific evidentiary weight to medical opinions. *See Etherington v. Saul*, No. 19-cv-475-JVB-JPK, 2021 WL 414556, at *3 (N.D. Ind. Jan. 21, 2021), *report and recommendation adopted sub nom. Bart E. v. Saul*, No. 19-cv-475-JVB-JPK, 2021 WL 411440 (N.D. Ind. Feb. 5, 2021) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion." *Id*. (citing 20 C.F.R. §§ 404.1520c, 416.920c). When evaluating a medical opinion, an ALJ considers the following:

> (1) Supportability used by the medical source to support his opinion; (2) Consistency of the medical opinion with the other evidence in the record; (3) Relationship with the claimant, including the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and

10

  the examining relationship; (4) Specialization of the medical source; and (5) Other factors that tend to support or contradict a medical opinion.

*Id*. (citing 20 C.F.R. §§ 404.1520c(c)(1)-(5)). The regulations provide that supportability and consistency are the most important factors to consider. *Id*. (citing 20 C.F.R. §§ 404.1520c(b)(2)).

  Here, Dr. Grimm completed a Mental Residual Functional Capacity Statement and opined that plaintiff's ability to understand, remember, carry out simple instructions, maintain attention/concentration for extended periods, perform activities within a schedule, accept instructions, get along with co-workers, and respond appropriately to changes in the work setting would be precluded for 15 percent or more of the workday. (R. 21.) Dr. Grimm further determined that plaintiff's ability to sustain an ordinary routine and interact appropriately with the public would be precluded by 10 percent of the workday, and plaintiff's ability to be aware of normal hazards and make simple work-related decisions was precluded by 5 percent. (*Id*.) The ALJ rejected these opinions because Dr. Grimm failed to "address specific work related limitations[,] and his extreme limitations in other areas are inconsistent with the relatively mild symptoms described in the record and during a consultative examination." (*Id*.) The Court finds that the ALJ's rejection of Dr. Grimm's opinion was not error. The ALJ adequately considered whether Dr. Grimm's opinion was supported by and consistent with the evidence in the record by noting that Dr. Grimm's extreme limitations were inconsistent with other evidence in the record and that Dr. Grimm did not address any specific work related limitations.

  **E. Other Available Work**

  The ALJ determined that plaintiff could perform work as an office helper (DOT 239.567-010, light, unskilled) with 47,000 positions nationally; mail clerk (DOT 209.687-026, light, unskilled) with 68,000 positions nationally; and, cleaner (DOT 323.687-014, light, unskilled) with 150,000 positions nationally. (R. 25.) Plaintiff argues, without citing any specific legal authority,

11

that the ALJ improperly accepted unreliable vocational testimony regarding other available work. He argues that the ALJ should have assigned him to a job with Reasoning Level 1, as opposed to Reasoning Level 3. He further states that that the cleaner job is inconsistent with his limitations to occasional reaching overhead and handling with his right upper extremity. The Commissioner responds that there is no conflict with the reasoning level of each job assigned to plaintiff. Additionally, the Commissioner contends that the VE properly considered plaintiff's upper extremity limitations when determining that plaintiff could perform the job of a cleaner. The Court agrees.

Here, plaintiff has failed to identify an inherent conflict between his RFC (that he is restricted to performing "simple tasks") and the jobs the ALJ determined he could perform, which require Reasoning Level 3. Limitations of "simple tasks" are not inherently inconsistent with Reasoning Level 3 occupations. *See Sawyer v. Colvin*, 512 F. App'x 603, 610-11 (7th Cir. 2013) (finding no conflict when a claimant is restricted to "simple tasks" and assigned a Reasoning Level 3 job); *Terry v. Astrue*, 580 F.3d 471, 480 (7th Cir. 2009) (finding the plaintiff's educational background and cognitive abilities appeared to match the GED Reasoning Level 3 requirements);; *Mitchell v. Berryhill*, No. 17-cv-6241, 2019 WL 426149, at *4 (N.D. Ill. Feb. 4, 2019) (simple work restrictions are not necessarily inconsistent with Reasoning Level 3 occupations); *Edson W. v. Saul*, No. 19-cv-2626, 2021 WL 1293845, at *10 (N.D. Ill. Apr. 7, 2021) (finding no error in ALJ's reliance on VE's testimony that the plaintiff could perform jobs at Reasoning Level 2 and 3 when his RFC restricted him to "simple tasks."). Accordingly, the Court finds no error in the ALJ's finding that plaintiff could perform a Reasoning Level 3 job. Moreover, the VE did consider plaintiff's upper extremity limitations, including occasional overhead reaching and occasional

handling with one hand, when considering the ALJ's hypotheticals and determining that plaintiff could perform a job as a cleaner. (R. 3276-7.) The Court finds no error with this analysis.

## Conclusion

For the reasons set forth above, the Court affirms the Commissioner's decision and terminates this case.

**SO ORDERED.**                               **ENTERED: April 4, 2022**

*[signature: M. David Weisman]*

**M. David Weisman**
**United States Magistrate Judge**